IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| FOWERS FRUIT RANCH, LC, a Utah limited liability company, S&L FARMS, LC, a Utah limited liability company, LYNN J. FOWERS, individually and as Trustee of the LYNN J. FOWERS 2012 LIVING TRUST, and SHERRYL FOWERS, individually and as Trustee of the SHERRYL FOWERS 2012 LIVING TRUST,<br><br>                Plaintiffs,<br><br>          vs.<br><br>BIO TECH NUTRIENTS, LLC, a Nevada limited liability company,<br><br>            Defendant. | ORDER<br><br>AND<br><br>MEMORANDUM DECISION<br><br>Case No. 2:11-cv-00105-TC |

In this case, the Plaintiffs (collectively, Fowers Fruit Ranch) allege claims for strict products liability, failure to warn, negligence, breach of express warranty, breach of the implied warranty of merchantability, and breach of the implied warranty of fitness for a particular purpose. These claims arise out of Fowers Fruit Ranch's use of fertilizer products manufactured and sold by Defendant Bio Tech Nutrients, LLC (Bio Tech). Bio Tech seeks dismissal of Fowers Fruit Ranch's claims in three separate motions for partial summary judgment, which will all be addressed in this order: a Motion for Partial Summary Judgment Regarding Duty and Causation (Dkt. No. 53); a Motion for Partial Summary Judgment on Breach of Warranty Claims (Dkt. No. 56); and a Motion for Partial Summary Judgment Regarding the Economic Loss Rule (Dkt. No.

57). After carefully considering the parties' briefing, the arguments made at the hearing on these motions, and the relevant law and facts, the court holds that genuine issues of material fact exist that preclude summary judgment on each of the grounds argued by Bio Tech. The court therefore denies Bio Tech's motions for partial summary judgment.

Bio Tech also filed a Motion to Strike Expert Witness Reports of Dr. Earl J. Seeley (Dkt. No. 55). The court will not address this motion here but will hold a separate <u>Daubert</u> hearing to consider the issues raised in the motion. The court will hold a status conference on Monday, November 24, 2014 at 10:00 a.m. and will schedule the <u>Daubert</u> hearing at that time.

## <u>FACTUAL BACKGROUND</u>[1]

Fowers Fruit Ranch operates a fruit orchard located in or near Genola, Utah, where it grows and later markets and distributes various types of fruit, including sweet cherries, tart cherries, apples, plums, raspberries, and blackberries. Sherryl and Lynn Fowers purchased Fowers Fruit Ranch in 1969. The Fowers' son, Jerry, is now the operations manager at Fowers Fruit Ranch and is in charge of general farm management. Throughout his life, Jerry Fowers has worked with his parents in the fruit business and over the last several years has assumed management of Fowers Fruit Ranch, although Lynn Fowers also oversees farm management. Bio Tech formulates, manufactures, markets, distributes, promotes, labels, and/or sells BTN+ and Enviromoist, the two products at issue in this case.

---

[1] The facts are taken from the parties' briefing on Bio Tech's motions for partial summary judgment, with the court identifying disputes of material fact where they may exist. Because Fowers Fruit Ranch is the nonmoving party, the court lays out the facts and all reasonable inferences from those facts in the light most favorable to Fowers Fruit Ranch. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc., 912 F.2d 1238, 1241 (10th Cir. 1990).

Jerry Fowers was introduced to Bio Tech and its products in February 2008 when he first met his soon-to-be father-in-law, John Kunz. Mr. Kunz was president of Bio Tech and had developed its products. According to Mr. Fowers' testimony,[2] Mr. Kunz explained at this initial meeting that Bio Tech's BTN products were a program that would replace all conventional fertilizers and would produce bigger and better fruit. Mr. Kunz touted the products' ability to build carbon and sugar in plants and further explained that BTN products not only added nutrients but also broke down micronutrients, which would assist a plant's ability to take up the nutrients from the soil and into the plant's roots.

In April 2008, Lynn Fowers met John Kunz for the first time when Mr. and Mrs. Fowers had dinner with Mr. Kunz and his wife, along with Jerry Fowers and his then fiancé. During this dinner, Mr. Kunz again explained Bio Tech's products, this time to both Jerry Fowers and Lynn Fowers. Mr. Kunz made the same representations about Bio Tech products that he had made to Jerry Fowers in February 2008.

In June 2008, Mr. Kunz came to Fowers Fruit Ranch to again talk about Bio Tech's products, particularly BTN+. Mr. Kunz assured Jerry and Lynn Fowers that BTN+ was safe and demonstrated the product by applying BTN+ directly onto the trunks of some mature sweet cherry trees. Mr. Kunz also recommended that this same method should be used in other sections of the orchard by having someone drive through each section and spray BTN+ directly onto the

[2] While Bio Tech disputes the legal significance of any Bio Tech statements, it appears that Bio Tech does not dispute the nature or content of the parties' communications in which Bio Tech allegedly explained its products and instructed Fowers Fruit Ranch on the use of BTN+ and Enviromoist. Whether Bio Tech disputes these facts or not, the court has taken the material facts related to the communications between the parties from the testimony of Jerry Fowers, as provided both in his declaration (Dkt. No. 62-2) and deposition (Dkt. No. 86-1).

trunks of the trees. Although Jerry and Lynn Fowers remained somewhat skeptical of Mr. Kunz's promises, they decided to try BTN+ as recommended on some new plantings that would take some years to become productive. So Fowers Fruit Ranch employees sprayed BTN+ directly onto limited crops using an orchard speed sprayer. Also in June 2008, Mr. Kunz instructed Jerry Fowers to apply BTN+ to the orchard's raspberries via fertigation, a process of injecting BTN+ into the irrigation water to be sprayed over the patch. And Mr. Fowers did as instructed.

The BTN+ label and instructions state that the product should only be applied via fertigation. But Jerry Fowers testified that he does not recall receiving a labeled product container or written instructions. He also testified that he regularly communicated with Bio Tech[3] during the time Fowers Fruit Ranch used BTN+. He also testified that, before applying BTN+ via any method, he contacted Bio Tech and discussed the proposed application with Bio Tech employees. According to Mr. Fowers, Bio Tech always approved the proposed uses and application methods and never explained that fertigation was the only approved application method for BTN+.

After applying BTN+ to select crops in 2008, no one at Fowers Fruit Ranch recognized any immediate change. So BTN+ was applied again in the spring and summer of 2009, expanding the product's use to additional portions of the orchard. While applying BTN+ to certain sections of certain crops, Jerry and Lynn Fowers continued to use their regular fertilization program throughout the rest of the orchard.

---

[3] Jerry Fowers testified that, throughout the time Fowers Fruit Ranch learned about and used Bio Tech products, he communicated with various Bio Tech representatives, including John Kunz, Tim Williams, and Greg Mansfield. To simplify throughout the factual background, the court will refer to Bio Tech employees collectively as "Bio Tech representatives" or as "Bio Tech."

In early spring 2009, Bio Tech representatives came to the orchard and brought an additional product called Enviromoist. Bio Tech stated that Enviromoist was a mixture of BTN+ with polymers and explained that it would help plant roots grow faster and keep the roots from drying out. Bio Tech then recommended a root dip application of Enviromoist in a section of the orchard where new apple trees were being planted. Jerry Fowers had already planted six rows of new trees before Bio Tech arrived with the Enviromoist, but he followed Bio Tech's advice and dipped the roots of the remaining trees in the Enviromoist solution before planting them.

Within two or three weeks after planting the new apple trees, Jerry Fowers found that the trees dipped in Enviromoist were showing damage that resembled conditions known as fire blight or Phytophthora. At the tops of the trees, the leaves were wilting and turning black. The trunks of the trees were also drying out. The same symptoms did not appear in the trees that had not been dipped in Enviromoist. Mr. Fowers called Bio Tech and explained his view that the Enviromoist was causing the issues with the trees. Bio Tech representative Tim Williams came to the orchard and advised Mr. Fowers to spray more BTN+ on the trees. Acting on this advice, Mr. Fowers sprayed the trees with BTN+. Despite the additional application of BTN+, nearly all the trees whose roots had been dipped in Enviromoist eventually died.

Also in 2009, Fowers Fruit Ranch employees applied BTN+ directly to a section of cherry trees and in some instances sprayed both BTN+ and hydrogen peroxide, based on Bio Tech's recommendation that the application would help address a condition known as powdery mildew. During the 2009 harvest, some of the sprayed cherry trees began to decline, and within a week or two after harvest, trees began having "heart attacks," meaning the trees' leaves dried up and the trees began to die. Jerry Fowers asked Bio Tech's opinion on how to address the situation and, on

Bio Tech's advice, applied another dose of BTN+ to the dying trees. But many of the trees had already died, and others died despite the additional application of BTN+.

Aside from the apple trees that had been dipped in Enviromoist and the cherry trees that suffered from heart attacks, no other significant changes, positive or negative, were seen in the other crops treated with BTN+ in 2008 and 2009. Sometime at the end of 2009, Bio Tech took soil samples at the Fowers Fruit Ranch, which did not show any reason for concern at that time. Around the same time, in the fall of 2009 or spring of 2010, Jerry Fowers "observed the BTN+ was not performing as represented and wondered if the BTN+ was not getting absorbed into the tree from the trunk/canopy." (Dkt. No. 62-2, ¶ 37.) Based on these concerns, Mr. Fowers called Bio Tech and asked whether it might be more efficient to apply BTN+ directly to the soil, like a conventional fertilizer. Mr. Fowers testified that Bio Tech confirmed it would be fine to apply BTN+ directly to the soil and instructed Mr. Fowers to "put it on early enough that it can get watered in and we'll go from there." (Id. ¶ 39.) Mr. Fowers followed Bio Tech's instructions and applied BTN+ directly to the soil throughout the rest of 2009 and into the early part of 2010.

In early spring 2010, Jerry Fowers noticed that the trees and other plants treated with BTN+ looked very dehydrated. After emptying a tote of BTN+ in April 2010, Mr. Fowers also saw that large crystals had formed in all four corners of the tote. Mr. Fowers reported the crystals to Bio Tech, but Bio Tech assured Mr. Fowers the product was fine. After seeing some of the problems in the crops where BTN+ had been applied, Mr. Fowers no longer believed Bio Tech.

Mr. Fowers called multiple expert consultants to look at the orchard and particularly the sections treated with BTN+. Brent Black, from Utah State University (USU), visited the orchard in 2010 and noticed a significant difference in the raspberries. He observed that he had never

seen similar problems. Mr. Black had visited the orchard in 2009 and had not seen any problems with the raspberries at that time. Marian Murray, another expert from USU, also came to the orchard in 2010. She took soil and tissue samples and, based on her testing, concluded that Fowers Fruit Ranch had problems with fertility and/or nutrient deficiency. Mr. Fowers called Dr. Earl Seeley. On Dr. Seeley's visit in 2010, he noticed extreme dryness and extreme nitrogen deficiencies, among many other problems. Dr. Seeley began working with Fowers Fruit Ranch to revive the affected crops by applying conventional fertilizers to all crops treated with BTN+.

## <u>ANALYSIS</u>

Fowers Fruit Ranch filed its complaint in this case on January 25, 2011, alleging that BTN+ and Enviromoist severely damaged the crops and soil throughout its orchard, causing more than $5,000,000 in damage. Bio Tech now seeks summary judgment on the issues of duty and causation, on all breach of warranty claims, and on the application of the economic loss rule. The court grants summary judgment where "there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). The court "view[s] the evidence and make[s] all reasonable inferences in the light most favorable to the nonmoving party." <u>N. Natural Gas Co. v. Nash Oil & Gas, Inc.</u>, 526 F.3d 626, 629 (10th Cir. 2008).

### I.  **Motion for Partial Summary Judgment Regarding Duty and Causation**

In the briefing on its first motion for partial summary judgment, Bio Tech concedes that Fowers Fruit Ranch's claims for strict products liability, negligence, and failure to warn may proceed to trial, to the extent that those claims rest on the theory that Bio Tech manufactured and sold unreasonably dangerous products which caused damage when applied directly to plants. But,

for claims based on a theory that Bio Tech negligently instructed Fowers Fruit Ranch on the uses of Bio Tech products, or that Bio Tech's products caused a nutrient deficiency in the orchard's soil, Bio Tech seeks summary judgment on three separate grounds. Bio Tech first argues that Fowers Fruit Ranch cannot establish the duty of care necessary to its negligence claim. Bio Tech also contends that Fowers Fruit Ranch cannot show that Bio Tech's conduct was the cause of the nutrient deficiency in the orchard's soil. Moreover, Bio Tech maintains that Fowers Fruit Ranch itself caused its crops to be damaged because it did not use BTN+ as instructed. The court addresses each argument separately below.

### A. Duty

"An essential element of every negligence action is the existence of a duty of care owed by the defendant to the plaintiff." MacGregor v. Walker, 2014 UT 2, ¶ 11, 322 P.3d 706. "'[D]uty is a question of law determined on a categorical basis, while breach and proximate cause are questions for the fact finder determined on a case-specific basis.'" Torrie v. Weber County, 2013 UT 48, ¶ 17, 309 P.3d 216 (quoting Jeffs ex rel. B.R. v. West, 2012 UT 11, ¶ 25, 275 P.3d 228). Utah courts consider the following factors "when ascertaining whether a duty of reasonable care exists: (1) the extent that the manufacturer could foresee that its actions would cause harm; (2) the likelihood of injury; (3) the magnitude of the burden of guarding against it; and (4) the consequences of placing the burden on the defendant." Slisze v. Stanley-Bostitch, 1999 UT 20, ¶ 12, 979 P.2d 317.

Bio Tech does not address these factors in its briefing. It instead assumes that Fowers Fruit Ranch's negligence claim is akin to a professional malpractice claim and so argues that Fowers Fruit Ranch must provide expert testimony to establish the duty applicable to a farm

consultant. Based on its review of the complaint and the parties' briefing and argument, and viewing the evidence in the light most favorable to Fowers Fruit Ranch, the court concludes that Bio Tech misunderstands the nature of Fowers Fruit Ranch's negligence claim. Fowers Fruit Ranch has not asserted a professional malpractice claim against Bio Tech.

Rather, as Fowers Fruit Ranch has explained, its negligence claim is premised on Bio Tech's "duty to fulfill the promises made in its literature, in its communications with Fowers, and in its actions in providing, training, supervising, follow-up and problem solving relating to the use and application of its products on Fowers' trees and bushes." (Dkt No. 62 at 2.) Utah courts, when faced with similar allegations of negligence, have held that defendants have a duty to reasonably explain their products and warn consumers about potential hazards that could arise from the use of those products. See Slisze, 1999 UT 20, ¶ 15 ("A manufacturer has a duty to warn against a product's latent hazards that are known to the manufacturer but unknown to the consumer."); Hunt v. ESI Eng'g, Inc., 808 P.2d 1137, 1139 (Utah Ct. App. 1991) ("It is clear that in negligence cases, a designer has a duty to design its product so as to eliminate any unreasonable risk of foreseeable injury." (internal quotations omitted)). Under Utah law, Bio Tech owed a similar duty to Fowers Fruit Ranch in this case.

Moreover, even if Bio Tech correctly characterizes Fowers Fruit Ranch's negligence claim as one relating to professional farm consultation services, Fowers Fruit Ranch has still presented sufficient evidence to establish a duty under Utah law. Even assuming Bio Tech is correct that expert testimony is necessary to establish a duty under this theory, Fowers Fruit Ranch has designated experts who have opined about the sufficiency of Bio Tech's advice. Dr. Bryan Hopkins will testify that Bio Tech lacked "knowledge regarding plants and soils and the

laws of nature and science," (Dkt. No. 54-10 at 2), and made "irresponsible" and "misleading" recommendations when it advised Fowers Fruit Ranch to discontinue using traditional fertilizers in favor of BTN+. (See, e.g., id. at 2, 6, 8.) Fowers Fruit Ranch's second expert, Dr. Earl Seeley provides similar opinions, explaining that Fowers Fruit Ranch did not use essential, established fertilization programs because Bio Tech claimed that such programs were not necessary when BTN+ was being used. (Dkt. No. 54-11 at 13-21.) If expert testimony is required to establish duty, Fowers Fruit Ranch has provided it.

In MacGregor v. Walker, 2014 UT 2, the Utah Supreme Court provided an alternative basis for imposing a duty on defendants who render services to plaintiffs. Specifically, the court recognized Utah's adoption of Restatement (Second) of Torts § 323, which includes this statement:

> One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of the other's person or things, is subject to liability to the other for physical harm resulting from his failure to exercise reasonable care to perform his undertaking, if (a) his failure to exercise such care increases the risk of such harm, or (b) the harm is suffered because of the other's reliance upon the undertaking.

Id. ¶¶ 12, 13.

As explained in MacGregor, to establish a duty under Section 323, a plaintiff must first show that the defendant undertook to render services to the plaintiff. The evidence in this case shows that, after John Kunz explained the positive properties of BTN+ and gave an initial demonstration of the product, Jerry and Lynn Fowers bought BTN+ and began applying it in portions of the orchard. Jerry Fowers also remained in regular communication with Bio Tech throughout the time he used BTN+. In its initial demonstration and later communication, Bio

Tech recommended certain applications of BTN+ and addressed Mr. Fowers' inquiries on how and when to apply BTN+ to specific crops. Each time Mr. Fowers contacted Bio Tech with questions, Bio Tech confirmed the proposed applications of BTN+. This evidence is sufficient to show that Bio Tech undertook to render services to Fowers Fruit Ranch.

In addition to showing a voluntary undertaking by Bio Tech, Fowers Fruit Ranch must also provide evidence either that Bio Tech's undertaking increased Fowers Fruit Ranch's risk of harm or that the harm suffered resulted from reliance on Bio Tech's undertaking. Id. ¶ 19. "In other words, the defendant's negligent performance must somehow put the plaintiff in a worse situation than if the defendant had never begun performance." Id. ¶ 23.

The evidence presented by Fowers Fruit Ranch shows harm causally linked to the use of BTN+ and Enviromoist as directed by Bio Tech. The evidence generally shows that, in areas where BTN+ was sprayed directly onto trees based on Bio Tech's recommendations, the sprayed trees were damaged, while unsprayed trees in the same areas were not. Similarly, the sections of the orchard that Fowers Fruit Ranch kept on its traditional fertilizer program did not show the same damage as those sections treated with BTN+.

The evidence also shows specific damage resulting from Bio Tech's advice. For instance, Bio Tech advised Fowers Fruit Ranch that it could combat powdery mildew in its cherry trees by directly spraying the trees with BTN+ combined with hydrogen peroxide. Shortly after Fowers Fruit Ranch followed Bio Tech's instructions, the sprayed trees began having "heart attacks" and many of the trees died. Also, for apple trees dipped in Bio Tech's Enviromoist product, the trees' leaves dried out and many trees died. Undipped trees in the same section did not have the same problems. Fowers Fruit Ranch's experts have also opined that Bio Tech's advice about the

applications of BTN+ and its instructions to cease using traditional fertilizers caused significant damage to the affected plants and trees and also caused nutrient deficiencies in the soil. This evidence is sufficient to show that the harm to Fowers Fruit Ranch's plants resulted from its reliance on Bio Tech's advice. The court therefore finds sufficient evidence of a breach of the duty recognized by Utah law and described in Section 323 of the Restatement.

### B. Causation

"Generally, causation 'cannot be resolved as a matter of law.'" Kilpatrick v. Wiley, Rein & Fielding, 909 P.2d 1283, 1292 (Utah Ct. App. 1996) (quoting Butterfield v. Okubo, 831 P.2d 97, 106 (Utah 1992)); see also id. ("Causation is a highly fact-sensitive element of any cause of action."). Indeed, '[b]ecause proximate cause is an issue of fact," courts "refuse to take it from the jury if there is *any evidence* upon which a reasonable jury could *infer* causation.'" Id. at 1293 (quoting Butterfield v. Okubo, 831 P.2d 97, 106 (Utah 1992)) (emphasis in original).

On the question of whether Bio Tech or its products proximately caused a nutrient deficiency in Fowers Fruit Ranch's soil, the evidence shows that, for the most part,[4] no one at Fowers Fruit Ranch noticed any significant difference, positive or negative, in the crops treated with BTN+ in 2008 and 2009. Also, soil samples taken by Bio Tech at the end of 2009 did not show any reason for immediate concern. But in the fall of 2009 or spring of 2010,[5] Jerry Fowers

---

[4] As explained above, the court recognizes that Fowers Fruit Ranch has produced evidence of damage to its apple trees dipped in Enviromoist and its cherry trees sprayed with a combination of BTN+ and hydrogen peroxide. With the exception of these two examples, Fowers Fruit Ranch did not identify any changes in its crops in 2008 or 2009.

[5] In his deposition (Dkt. No. 86-1), Mr. Fowers testified that he began asking about lack of results in the spring of 2010, but in his declaration provided in the briefing on these motions (Dkt. No. 62-2), Mr. Fowers testified that he contacted Bio Tech in the fall of 2009 with his concerns. The slight difference does not affect the outcome of this motion.

began to be concerned that he had not seen any signs of improvement, as promised by Bio Tech. So he called Bio Tech and asked whether it might be more effective to apply BTN+ directly to the soil, like a conventional fertilizer. According to Mr. Fowers, Bio Tech confirmed and recommended that BTN+ could be sprayed directly onto the soil. Mr. Fowers then followed Bio Tech's advice and applied BTN+ directly to the soil throughout the rest of 2009 and into the early part of 2010.

In the spring of 2010, Mr. Fowers noticed that the trees and plants treated with BTN+ looked very dehydrated. After emptying a tote of BTN+ in April 2010, he also saw that large crystals had formed in all four corners of the tote. Mr. Fowers reported the crystals to Bio Tech, but Bio Tech said the product was fine. But after seeing this damage, Mr. Fowers doubted Bio Tech's assurances and contacted multiple experts to come assess the problems in the orchard. These experts noted significant decline in the crops treated with BTN+. One expert, Marian Murray from USU, took soil and tissue samples, which showed fertility problems and/or nutrient deficiencies. Fowers Fruit Ranch's retained expert, Dr. Earl Seeley, saw the same problems.

In sum, the evidence shows that Fowers Fruit Ranch did not have any documented issues with its crops before it began using BTN+. Even after using BTN+ for about a year in 2008 and 2009, Jerry Fowers did not observe any noticeable change, positive or negative, resulting from the application of BTN+. Soil samples also did not show any significant changes. But after Bio Tech confirmed that Mr. Fowers could spray BTN+ directly onto the soil to see better results, and after Mr. Fowers followed this advice, Fowers Fruit Ranch began seeing damage to the crops treated with BTN+. Both Jerry Fowers and outside experts observed signs of extreme dehydration and other damage in the BTN+-treated crops. Soil samples also confirmed nutrient

depletion. Based on these facts alone, a jury could infer that Bio Tech's advice to spray BTN+ directly on the soil resulted in the nutrient deficiencies.

Fowers Fruit Ranch has also provided expert evidence to support its causation theory. As Bio Tech recognizes (see Dkt. No. 53 at 3), Dr. Earl Seeley attributes the nutrient deficiencies to Bio Tech's advice that Fowers Fruit Farm would not need any other fertilizer if it used BTN+. Dr. Seeley notes that Bio Tech's program led to accumulated deficits, which were documented in 2010, only one year after Fowers Fruit Ranch began using BTN+. Dr. Seeley further opines that Bio Tech's "advice resulted in the development of Nitrogen, Phosphorus, and Potassium deficiencies very quickly in BTN+ treated blocks." (Dkt. No. 54-12 at 2.) Fowers Fruit Ranch's other retained expert, Dr. Bryan Hopkins' opinion is that Fowers Fruit Ranch "reduced [its] fertility program according to [Bio Tech] consultant recommendations" and such reduction led to soil deficiencies. (Dkt. No. 54-13 at 5.) Although Bio Tech's experts provide contrary opinions, the disputes in expert opinion merely confirm that genuine issues of material fact exist on the element of causation. Moreover, even though Bio Tech has identified several deficiencies it sees in Dr Seeley's and Dr. Hopkins' opinions, such deficiencies do not justify summary judgment on the issue of causation, especially in light of the court's conclusion that Fowers Fruit Ranch has produced sufficient non-expert evidence to present its causation evidence at trial.

## C.     Intervening cause

As the final basis for its Motion for Partial Summary Judgment Regarding Duty and Causation, Bio Tech argues the motion should be granted because Fowers Fruit Ranch did not follow Bio Tech's instructions when it applied BTN+ to its trees and plants. While it is not clear

from the parties' briefing, it appears Bio Tech is essentially arguing that the failure to follow

instructions was an intervening cause that breaks the chain of causation.

Similar to proximate cause issues, "intervening cause inquiries are typically fact-

sensitive." Breton v. Clyde Snow & Sessions, 2013 UT App 65, ¶ 10, 299 P.3d 13. The same is

true here. In this case, Bio Tech argues that Fowers Fruit Ranch failed to follow instructions on

BTN+ packaging. Specifically, Bio Tech points to the BTN+ label and package, which state that

BTN+ should only be applied via fertigation and should be applied every four to six weeks. It is

undisputed that Jerry Fowers applied BTN+ using other methods and on a different schedule than

indicated on the BTN+ packaging. But disputed issues of fact remain about whether Bio Tech

appropriately instructed Mr. Fowers and/or ratified his deviations from the written instructions.

At the outset, it is not clear that Fowers Fruit Farm had the opportunity to review the

BTN+ packaging, which provided the instructions referenced by Bio Tech. Mr. Fowers in fact

testified that he does not recall receiving BTN+ in a container with an instruction label attached,

which would have been consistent with other commercial fertilizers, which are often delivered in

large containers with no labels or instructions. (Dkt. No. 86-1 at 114-15.) In addition, Mr. Fowers

also testified that he regularly communicated with Bio Tech during the time Fowers Fruit Ranch

used BTN+. Before applying BTN+ via any method, Mr. Fowers contacted Bio Tech and

discussed each application with Bio Tech representatives. According to Mr. Fowers, Bio Tech

always approved the proposed uses and application methods and never explained that fertigation

was the only approved method for applying BTN+ or that BTN+ needed to be applied on a

certain schedule. Indeed, in demonstrating BTN+ in June 2008, John Kunz applied the product

by spraying it directly onto tree trunks, a practice that Fowers Fruit Ranch employees later

followed when using BTN+. From this evidence, a jury could infer that Fowers Fruit Ranch actually followed all directions from Bio Tech, even though Bio Tech's oral advice varied from its own written instructions.

## II.     Motion for Partial Summary Judgment on Breach of Warranty Claims

On Fowers Fruit Ranch's breach of warranty claims, Bio Tech argues Fowers Fruit Ranch has not produced evidence of an affirmative statement that could constitute an express warranty, or if such evidence has been produced, Bio Tech effectively disclaimed any warranties it may have made. Bio Tech specifically points to a document produced in discovery, referred to as Document 10 118. This document is part of the BTN+ promotional materials and contains the following language at the bottom of the page:

> **DISCLAIMER OF WARRANTIES. BIO TECH NUTRIENTS (BTN) MAKES NO WARRANTIES, GUARANTEES, OR REPRESENTATIONS, EXPRESS OR IMPLIED, WITH REGARD TO BTN+ OR THE RECOMMENDATIONS HEREIN. BTN FURTHER EXPLICITLY DISCLAIMS ALL WARRANTIES, GUARANTEES, OR REPRESENTATIONS OF ANY KIND TO BUYER, EITHER EXPRESS OR IMPLIED, OR BY USAGE OR TRADE, STATUTORY OR OTHERWISE, WITH REGARD TO BTN+ AND/OR THE ABOVE RECOMMENDATIONS, INCLUDING BUT NOT LIMITED TO ALL WARRANTIES OF MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE, USE AND ELIGIBILITY OF BTN+ FOR ANY PARTICULAR TRADE USAGE. WITHOUT LIMITING THE ABOVE, BTN DOES NOT WARRANT OR GUARANTEE THAT BTN+ AND/OR THE ABOVE RECOMMENDATIONS WILL PROVIDE A YIELD INCREASE WHEN USED FOR ANY SPECIFIC CROP. INSTANCES OF PAST PERFORMANCE EXPERIENCED BY THOSE USING BTN+ AND ANY RECOMMENDATIONS FROM BTN DOES NOT GUARANTEE OR WARRANT SIMILAR FUTURE PERFORMANCE OR RESULTS.**

(Dkt. No. 56-6 at 18.) In his declaration, Jerry Fowers explained that he did not discover or review Document 10 118 until after Fowers Fruit Ranch stopped using BTN+ in April 2010. Sometime in the summer or fall of 2010, after seeing the damage to the orchards' crops, Mr.

Fowers searched online for documents pertaining to Bio Tech. As a result of his search, Mr. Fowers found Document 10 118 and copied it from the Bio Tech website.

Bio Tech also argues it cannot be liable for breach of warranty because Fowers Fruit Ranch did not follow Bio Tech's written instructions. As explained above, there is sufficient evidence to survive summary judgment on the issue of whether Fowers Fruit Ranch followed Bio Tech's written and oral instructions. Because this issue has already been resolved, the court will address the remaining issues of express warranty and disclaimer.

### A. Express warranty

To establish a claim for breach of express warranty, Fowers Fruit Ranch must first prove that Bio Tech made an express warranty about its products that became part of the basis of the parties' bargain. Boud v. SDNCO, Inc., 2002 UT 83, ¶ 12, 54 P.3d 1131. While "[a]n express warranty does not require any particular words," Groen v. Tri-O-Inc., 667 P.2d 598, 606 (Utah 1983), express warranties are created by "[a]ny affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain" or by "[a]ny description of the goods which is made part of the basis of the bargain." Utah Code Ann. § 70A-2-313(1)(a), (b).

A statement qualifies as an affirmation of fact where it is "objective in nature, i.e., verifiable or capable of being proven true or false." Boud, 2002 UT 83, ¶ 13. "Thus, the determination of whether an express warranty has been created ultimately hinges upon an examination of whether representations made by the seller were mere statements of opinion or were, rather, promises or affirmations of fact." Id. ¶ 12. In other words, "a plaintiff must demonstrate promises by the warrantor guaranteeing or assuring a specific result." Hone v.

Advanced Shoring & Underpinning, Inc., 2012 UT App 327, ¶ 12, 291 P.3d 832 (internal quotations omitted).

In Boud, the Utah Supreme Court held that statements in a boat brochure could not be considered affirmations of fact where the statements touted a boat as offering the "best performance" and "superb handling." 2002 UT 83, ¶ 14. The court reasoned that "[t]he word 'best' is a description that must ultimately be measured against some opinion or other imprecise standard, and 'superb' is a near synonym subject to the same qualification." Id. Similarly, "performance" refers to numerous qualities that may be measured differently by different people. Id. Because people could argue that a boat was "best" or "superb" based on their own personal preferences, the statements were mere opinions, not affirmations of fact. Id.

Unlike in Boud, Fowers Fruit Ranch has identified several statements by Bio Tech which were objective affirmations of fact. When John Kunz first introduced Bio Tech's products in February 2008, he told Jerry Fowers that if he used BTN+, no other fertilizer program would be necessary because BTN+ would not only add nutrients to the soil but would also allow the soil to better absorb existing nutrients. Mr. Kunz also represented that BTN+ would produce bigger and better fruit. Mr. Kunz made similar statements in June 2008 when he met Lynn Fowers. In addition, while the BTN+ label and package indicate otherwise, Bio Tech orally assured Jerry Fowers that he could safely apply BTN+ by using methods other than fertigation.

While Bio Tech's statements about "better" fruit could only be measured based on personal opinion, statements about eliminating the need for conventional fertilizers, adding nutrients to the soil, and producing bigger fruit, could all be objectively verified by testing the soil and fruit. Statements about the safety and propriety of applying BTN+ using methods other

than fertigation could be verified by attempting these alternative methods. Bio Tech's statements were not mere puffing or sales talk. Instead, Bio Tech made promises and gave instructions that assured specific results. As such, the statements were affirmations of fact sufficient to create an express warranty.

### B. Disclaimer

Bio Tech also argues that, even if it created an express warranty, such warranty was disclaimed by its sales literature. In LWT, Inc. V. Childers, 19 F.3d 539 (10th Cir. 1994), the Tenth Circuit explained that a disclaimer or limited warranty may limit other express and implied warranties "so long as the purchaser received the [material providing the disclaimer or warranty] and had an opportunity to read the warranty prior to or at the time of the sale." Id. at 541 (citations omitted). In Childers, the defendant argued that its catalog contained a limited warranty, which precluded the plaintiff's warranty claims. The trial court granted summary judgment to the plaintiff, finding that the limited warranty never became part of the parties' agreement. On appeal, the Tenth Circuit reversed and remanded because there were disputed issues of fact about whether the plaintiff possessed or received the catalog before the sale. Id. at 542. But cf. Utah Power & Light Co. v. Babcock & Wilcox Co., 795 F. Supp. 1074, 1077 (D. Utah 1992) (finding a valid disclaimer where the "contract was reviewed very carefully many times by both parties and their counsel over a period of six years").

Bio Tech maintains that it effectively disclaimed all warranties related to BTN+ because it provided a written disclaimer in BTN+ materials, specifically in Document 10 118. This document includes a paragraph disclaiming all warranties in bold, capital letters. But as in Childers, Fowers Fruit Ranch has produced evidence that no one received or reviewed this

document and the included disclaimer until well after buying BTN+ or any other Bio Tech product. Jerry Fowers has testified that he did not discover Document 10 118 until after he stopped using BTN+ in April 2010. Sometime in the summer or fall of 2010, after seeing the damage to the orchards' crops, Mr. Fowers found Document 10 118 when he searched online for documents pertaining to Bio Tech. Viewing this evidence in the light most favorable to Fowers Fruit Ranch, there is a genuinely disputed issue of fact as to whether Fowers Fruit Ranch received Bio Tech's disclaimer before it purchased Bio Tech products.

### III.     Motion for Partial Summary Judgment Regarding the Economic Loss Rule

In its third and final motion, Bio Tech argues that Fowers Fruit Ranch's claims for strict liability, failure to warn, and negligence should be dismissed because the alleged damages related to those claims—including damages for diminished crops, undersized crops, loss of crops, lost profits, and loss of future profits—are economic losses and recovery should therefore be barred by the economic loss rule.

"[T]he economic loss rule prevents recovery of economic damages within the scope of the parties' contract but allows for recovery of damages to other property or for bodily injury." Reighard v. Yates, 2012 UT 45, ¶ 3, 285 P.3d 1168. Economic losses include "[d]amages for inadequate value, costs of repair and replacement of the defective product, or consequent loss of profits—without any claim of personal injury or damage to other property." Maack v. Res. Design & Constr., Inc., 875 P.2d 570, 580 (Utah Ct. App. 1994), abrogated on other grounds by Davencourt at Pilgrims Landing Homeowners Ass'n v. Davencourt at Pilgrims Landing, LC, 2009 UT 65, 221 P.3d 234 (internal quotations omitted).

But if a plaintiff sues in tort and "'claim[s] . . . personal injury or damage to other property'—that is, property other than the property bought and sold under the contract—then no economic loss is claimed and the case may proceed under tort law." Simantob v. Mullican Flooring, L.P., 527 Fed. App'x 799, 803 (10th Cir. 2013) (quoting Am. Towers Owners Ass'n, Inc. v. CCI Mech., Inc., 930 P.2d 1182, 1189 (Utah 1996)); see also Davencourt, 2009 UT 65, ¶ 25 ("Where a defect causes physical damage to 'other property' the economic loss rule will not bar recovery." (quoting Am. Towers, 930 P.2d at 1191)).

The economic loss rule does not apply in this case. If Fowers Fruit Ranch had entered into a contract with Bio Tech and claimed losses covered by such a contract, the economic loss rule may apply. But that is not the case here. There is no evidence of a contract in this case, and as such, any losses cannot be defined by a nonexistent contract. In addition, Fowers Fruit Ranch does not seek economic losses as defined by Utah law. Fowers Fruit Ranch does not seek repair or replacement of the allegedly defective Bio Tech products, nor does it seek to recover other economic losses that would normally be covered by the terms of a contract for the sale of Bio Tech's products. Fowers Fruit Ranch claims physical damage to its property—namely, damage to trees, other plants, and soil in the areas where Bio Tech products were used. Because Fowers Fruit Ranch claims that defective products caused physical damage to other property, the economic loss rule does not apply.

## ORDER

For the foregoing reasons, the court enters the following order:

1. Defendant's Motion for Partial Summary Judgment Regarding Duty and Causation (Dkt. No. 53) is DENIED.

2.    Defendant's Motion for Partial Summary Judgment on Breach of Warranty Claims (Dkt. No. 56) is DENIED.

3.    Defendant's Motion for Partial Summary Judgment Regarding the Economic Loss Rule (Dkt. No. 57) is DENIED.

DATED this 16th day of October, 2014.

                    BY THE COURT:

                    TENA CAMPBELL
                    U.S. District Court Judge