IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| FOWERS FRUIT RANCH, LC; S & L FARMS, LC; LYNN J. FOWERS; and SHERRYL FOWERS, <br><br>Plaintiffs, <br><br>vs. <br><br>BIO TECH NUTRIENTS, LLC, <br><br>Defendant. | MEMORANDUM DECISION AND ORDER <br><br><br><br>Case No. 2:11-CV-00105-TC |

Plaintiffs Fowers Fruit Ranch, LC; S & L Farms, LC; Lynn J. Fowers; and Sherryl Fowers (collectively "Fowers") own and operate a fruit orchard. They filed a lawsuit against Defendant Bio Tech Nutrients, LLC (Bio Tech), a company that convinced Fowers to stop their traditional fertilizing program and use its products instead. After trial, the jury awarded Fowers $1,172,651 in damages for the injuries to their orchard.

Bio Tech now files a Renewed[1] Motion for Sanctions (ECF No. 170) asking the court to sanction Fowers' counsel for ignoring a prior order that excluded evidence of lost revenues associated with tart cherries. That order excluded evidence as a sanction for Fowers' late supplementation to their initial disclosures. Throughout the trial, Fowers' counsel repeatedly argued for a damage award that necessarily would have relied on the tart-cherry evidence and tried to introduce this evidence even after the court told them to stop.

For reasons discussed more fully below, the court grants Bio Tech's motion in part and denies in part orders Fowers' counsel to pay Bio Tech for its attorneys fees associated with filing the renewed motion.

## **BACKGROUND**

In 2008, Fowers adopted a new fertilizer plan that Bio Tech recommended. Rather than applying traditional fertilizers, Fowers began applying Bio Tech's products to some of their fruit plants. The fruit plants

---

[1] Bio Tech made its first motion for sanctions after Fowers' closing arguments

affected by the Bio Tech products included tart cherries, sweet cherries, apples, and berries. Fowers eventually filed a lawsuit against Bio Tech.

**I.   The exclusion of evidence**

In Fowers' initial disclosures, they designated Dr. Earl J. Seeley as an expert witness who would supply a calculation of damages and testify about how the adoption of the Bio Tech fertilizer plan injured the plants. Bio Tech moved to exclude some of Dr. Seeley's testimony—specifically, his opinion about lost revenues due to injuries to tart-cherry trees. After a hearing on Mr. Seeley's reliability, the court granted Bio Tech's motion and struck, in accordance with Daubert v. Merrill Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993), the parts of his expert report "about crop yields, future crop prices, or lost revenues for tart cherries." (Order & Mem. Decision 24, ECF No. 101.) In effect, this order excluded testimony from Dr. Seeley about lost tart-cherry revenues.

The court issued its decision to exclude his testimony on May 15, 2015. Fowers had not disclosed any other evidence that supported their damage calculations for lost revenues for tart cherries. Fowers did not supplement their disclosures until October 15, 2015, eighteen days before the original

November 2 trial date.[2]  This supplement included 3500 pages of documents about crop yields and sales from 2013 through 2015.  Fowers would have used these documents, in part, to prove lost revenues for tart cherries.

At the final pretrial conference, Fowers said that the documents supported the testimonies of Lynn, Sherryl, and Jerry Fowers (the owners and managers of the farm) and Richard Hoffman, another designated expert witness.  Fowers had not disclosed, before October 21, that Lynn, Sherryl, or Jerry Fowers would testify about damage calculations or that they or Mr. Hoffman would use these documents for their calculation of damages.  Further, Fowers failed to designate Lynn, Sherryl, or Jerry Fowers as potential expert witnesses under Federal Rule of Evidence 702 and Federal Rule of Civil Procedure 26(a)(2)(A).

Because Fowers' supplementation was late, the court, under Federal Rule of Civil Procedure 37(c)(1), excluded evidence that would support damages for lost tart-cherry revenue.  (Order, ECF No. 138.)  This ruling, on October 30, 2015, significantly affected Fowers' potential damage award.  If

---

[2] The court later continued the trial start date to February 1, 2016, because of an unfortunate injury to one of the Fowers' close family members.

Dr. Seeley had overcome the Daubert gatekeeping function, and his testimony about lost tart-cherry revenue had been admitted, there would have been some evidence for the jury to find approximately $4 million in damages. Without evidence about lost tart-cherry revenue, the most the jury could reasonably award was a little less than $1.3 million.

**II.    The January 27 request for clarification**

When the court continued the trial date from November 2, 2015, to February 1, 2016, the court announced that the case was frozen in time and the court would not receive motions to reconsider prior holdings. On January 27—four days before trial—Steven Paul, a member of Fowers' counsel, emailed the court and Bio Tech seeking "clarification from the Court relating to [Fowers'] ability to put on evidence of damage to the tart cherry orchards." (Email from Steven R. Paul to Case Administrator for the Honorable Tena Campbell (Jan. 27, 2016, 10:18 AM), ECF No. 170-3.) The court held a hearing that day to address Mr. Paul's request. At the hearing, Fowers' counsel essentially asked the court to reconsider prior orders that excluded evidence about lost tart-cherry revenue. The court affirmed the prior orders.

### III. Statements made at trial

On February 1, the first day of trial, during Fowers' opening statement, Fowers' counsel told the jury that it would hear evidence that would support $4 million in damages. This number would necessarily include evidence of the lost tart-cherry revenues. Fowers' counsel also elicited testimony from Lynn Fowers that Bio Tech's fertilizer program cost Fowers approximately $4 million. Bio Tech objected to the opening statement and the testimony. The court sustained the objection and instructed Fowers' counsel to stop using the $4 million figure. But they did not stop.

On the last day of trial, Fowers' counsel began their closing arguments asking the jury to award $4 million in damages. The court interrupted the argument, suggested that Mr. Paul had accidentally used some old notes, and instructed the jury to disregard the $4 million figure. Undeterred, Mr. Paul again asked for $4 million in the final sentences of his argument.

Once the jury had been excused, the court asked Mr. Paul if he had used the $4 million figure intentionally. He confirmed that he had. Bio Tech moved for the court to dismiss the entire lawsuit as a sanction. The court denied Bio Tech's motion, but admonished Mr. Paul for his actions. Now Bio

6

Tech renews its motion after the entry of judgment on the merits, which awarded Fowers $732,906.88.

## DISCUSSION

### I. Jurisdiction

Fowers, in their opposition memorandum, challenge the court's subject-matter jurisdiction over the lawsuit. During trial, the court raised its own concern about jurisdiction and ultimately concluded that it indeed had jurisdiction because diversity existed at the commencement of the lawsuit and citizenship of a trust's beneficiaries is irrelevant when the trustee is the litigant. (Mem. Decision & Order, ECF No. 166.)

Fowers cite the recent U.S. Supreme Court decision in <u>Americold Realty Trust v. Conagra Foods, Inc.</u>, 136 S. Ct. 1012 (2016), which was issued after this court's Memorandum Decision and Order on jurisdiction. The Supreme Court's new decision further supports this court's initial conclusion. The Court held that "when a trustee files a lawsuit or is sued in her own name, her citizenship is all that matters for diversity purposes." <u>Id.</u> at 1016 (citing <u>Navarro Savings Assn. v. Lee</u>, 446 U.S. 458, 462–66 (1980)). The Court continued, "For a traditional trust, therefore, there is no need to

determine its membership, as would be true if the trust, as an entity, were sued." Id.

Here, Lynn and Sherryl Fowers sued Bio Tech as trustees of their traditional trusts. Accordingly, only the trustees' citizenships matter, and there is complete diversity between the parties. Lynn and Sherryl Fowers are citizens of Utah, and they were the only two members of the two Plaintiff entities. The sole member of Bio Tech is the ASB Trust and its trustee is a citizen of Nevada. Also, the court retains jurisdiction to sanction conduct, after the case is resolved on the merits. Tiscareno v. Frasier, No. 2:07-CV-00336-CW, 2015 WL 7756064, at *4 (D. Utah Dec. 1, 2015) (citing Chambers v. NASCO, Inc., 501 U.S. 32, 56 (1991)).

## II. The court's power to sanction

Courts are inherently vested with the "power to impose silence, respect, and decorum, in their presence, and submission to their lawful mandates." Chambers, 501 U.S. at 43 (quoting Anderson v. Dunn, 19 U.S. (6 Wheat.) 204, 227 (1821)) (internal quotation marks omitted). The power is "to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." Id. (quoting Link v. Wabash R. Co., 370 U.S. 626,

630–31 (1962)) (internal quotation marks omitted). And this power "must be exercised with restraint and discretion." Id. at 44 (citing Roadway Express, Inc. v. Piper, 447 U.S. 752, 764 (1980)). To act in accordance with that discretion, a court's "sanction must be both 'just' and 'related to the particular "claim" . . . at issue.'" Ehrenhaus v. Reynolds, 965 F.2d 916, 920–21 (10th Cir. 1992) (quoting Ins. Corp. of Ir., LTD v. Compagnie des Bauxites de Guinee, 456 U.S. 694, 707 (1982)).

Before a court dismisses a lawsuit as a sanction, it "should ordinarily consider" the five Ehrenhaus factors:

> (1) the degree of actual prejudice to the defendant;
> (2) the amount of interference with the judicial process; . . . (3) the culpability of the litigant,
> (4) whether the court warned the party in advance that dismissal of the action would be a likely sanction for noncompliance; and (5) the efficacy of lesser sanctions.

Id. at 921 (textual omission in original) (citations omitted) (internal quotation marks omitted). The court considers these factors in order.

1. <u>Actual prejudice to the defendant</u>

Bio Tech claims it was unfairly prejudiced by continually being forced to object to Fowers' counsel's attempts to submit excluded evidence and their

arguments that necessarily relied on that evidence. (Reply Mem. 6–7, ECF No. 175.) Repeated objections may have prejudiced Bio Tech if the jury believed that the Fowers were being unfairly silenced. Fowers' counsel argue that Bio Tech was not injured because the jury's final award was the exact amount that Bio Tech's expert gave in his testimony, that is $1,172,651. (Mem. Opp'n 6, ECF No. 172.) Because the jury did not adopt an award higher than $1.3 million, knowing how much, if any, prejudice Bio Tech actually suffered is nearly impossible. Although the jury did not find the Fowers' counsel's conduct persuasive enough to award the higher amount, Bio Tech still was left trying to decide how often to object.

### 2. Interference with the judicial process

Fowers' counsel's insubordinate arguments and examinations in front of the jury interfered with the judicial process. The court, on October 30, 2015, had fully considered the question of whether to admit evidence about lost tart-cherry revenue. Fowers' counsel's request for clarification on January 27 was a veiled attempt to ask the court for reconsideration. At trial, Fowers' counsel repeatedly tried to circumvent the court's order in the opening and closing arguments and during witness examinations.

In sidebars, Fowers' counsel tried to resurrect their arguments that owners of companies can testify about damages. They try this again in their opposition memorandum. (See Mem. Opp'n 3 (quoting LifeWise Master Funding v. Telebank, 374 F.3d 917, 929–30 (10th Cir. 2004)).) Despite the fact that courts have allowed business owners to testify about lost revenues, Fowers may not rely on that because they still failed to supplement their initial disclosures and adequately notify Bio Tech how they planned to prove damages at trial. Further, if Lynn, Sherryl, or Jerry Fowers intended to give expert-opinion testimony about damages, Fowers' counsel should have, but did not disclose that before the eve of trial. Fed. R. Civ. P. 26(a)(2)(A); see also LifeWise, 374 F.3d at 930 ("Such . . . matters fail to be rationally based on [the owner's] perception, and therefore cannot be admissible as lay opinion testimony."); United States v. Peoples, 250 F.3d 630, 641 (8th Cir. 2001) ("What is essentially expert testimony . . . may not be admitted under the guise of lay opinions. Such a substitution subverts the disclosure and discovery requirements of Federal Rules of Criminal Procedure 26 and 16 and the reliability requirements for expert testimony . . . ." (citations omitted)).

Notwithstanding the clear rule and the court's ruling, the Fowers' counsel would not stop arguing the issue. They continue even now. This continually repeated argument disrupted the judicial process.

3. <u>Culpability of the litigant</u>

After Mr. Paul asked the jury for $4 million at the very end of his closing argument, the court asked him if he intentionally used the $4 million figure. He said that he was acting intentionally. This open insubordination of the court's instructions shows that Fowers' counsel's prior conduct was equally culpable.

Bio Tech does not argue that Fowers, the actual parties and litigants, intentionally encouraged their counsel's conduct. To dismiss the entire action and set aside the resolution of the lawsuit on the merits for their counsel's conduct would be too heavy of a sanction against the litigants.

4. <u>In-advance warnings of dismissal</u>

The court never warned Fowers of possibly dismissing the lawsuit as a sanction. The closest the court came to giving this type of warning was when Bio Tech moved for dismissal at the end of Fowers' closing argument. Yet the court denied that motion.

5. <u>Efficacy of lesser sanctions</u>

Sanctions less harsh than complete dismissal would effectively compensate Bio Tech for Fowers' counsel's actions.

**ORDER**

For these reasons, the court GRANTS in part and DENIES in part Bio Tech's Renewed Motion for Sanctions (ECF No. 170). The court sanctions Fowers' counsel by requiring them to reimburse Bio Tech for the reasonable attorneys fees and costs associated with submitting and arguing the current motion. The court directs Bio Tech to submit, as soon as practicable, affidavits or declarations, with supporting documentary evidence, that establish the fees and costs incurred in submitting the current motion and supporting memoranda.

DATED this 3rd day of August, 2016.

BY THE COURT:

*Tena Campbell*

TENA CAMPBELL
U.S. District Court Judge