IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| FOWERS FRUIT RANCH, LC; S & L FARMS, LC; LYNN J. FOWERS; and SHERRYL FOWERS, <br><br>     Plaintiffs, <br><br> vs. <br><br> BIO TECH NUTRIENTS, LLC, <br><br>     Defendant. | MEMORANDUM DECISION AND ORDER <br><br><br> Case No. 2:11-CV-00105-TC |

Plaintiffs Fowers Fruit Ranch, LC; S & L Farms, LC; Lynn J. Fowers; and Sherryl Fowers (collectively "Fowers") filed a lawsuit and obtained a jury verdict against Defendant Bio Tech Nutrients, LLC (Bio Tech). Judgment was entered in favor of Fowers on March 21, 2016. (ECF No. 168.) Bio Tech now files a Renewed Motion for Judgment as a Matter of Law under Federal Rule of Civil Procedure 50(b) that asks the court to vacate the jury's verdict and enter judgment

in its favor. (ECF No. 169.) Fowers filed a memorandum in opposition (ECF No. 171), and Bio Tech filed a reply memorandum (ECF No. 174).

For the reasons discussed more fully below, the court DENIES Bio Tech's motion because the jury had sufficient evidence to make its findings.

## BACKGROUND

Fowers operate a fruit ranch that produces cherries, apples, and other fruit. In 2008, they adopted Bio Tech's new fertilizer program for some of their fruit trees and bushes. They purchased Bio Tech's products and applied them in various ways. Some products were applied as a foliar, which means they were applied directly to plant tissue and leaves; some products were applied through fertigation, a method of injecting the chemical into the irrigation water, which dilutes the chemical; and some products were applied by dipping the plants' roots into the liquid product as they were planted. In addition to recommending the use of its products, Bio Tech told Fowers to abandon their traditional fertilizer program that would have supplied the plants with more macronutrients like nitrogen, phosphorus, and potassium.

Over time, some plants that received the Bio Tech products died and some struggled to survive. Some of these plants needed to be replaced. Fowers

eventually sued Bio Tech under multiple causes of action: (1) strict liability for a manufacturing or design defect; (2) strict liability for failing to warn Fowers; (3) negligence in manufacturing, designing, or warning Fowers; (4) breach of an express warranty; (5) breach of an implied warranty of merchantability; and (6) breach of an implied warranty of fitness for a particular purpose.  At the end of Fowers' case-in-chief, the court granted Bio Tech's motion for judgment as a matter of law in its favor for the last two causes of action, that is, the breaches of implied warranties.

After its deliberations, the jury declined to find Bio Tech liable for a manufacturing or design defect under strict-liability or negligence theories.  (Jury Verdict 1–3, ECF No. 163.)  It found Bio Tech strictly liable and negligent for failing to warn the Fowers as well as liable for breaching an express warranty.  (Id. at 2–4.)  The jury also found that Fowers suffered $1,172,651 in damages, and it apportioned Fowers 37.5% of the fault for those damages.  (Id. at 5.)

## DISCUSSION

Bio Tech asks the court to enter a judgment as a matter of law and vacate the entire damage award. It contends that the jury lacked sufficient evidence to find causation for the claims the jury found Bio Tech liable for.

A party is entitled to judgment as a matter of law only if all "evidence in the record reveals no legally sufficient evidentiary basis for a claim under the controlling law." Home Loan Inv. Co. v. St. Paul Mercury Ins. Co., — F.3d —, No. 15-1018, 2016 WL 3610054, at *3 (10th Cir. July 5, 2016) (quoting ClearOne Commc'ns, Inc. v. Bowers, 643 F.3d 735, 771 (10th Cir. 2011)) (internal quotation marks omitted). The court draws "all reasonable inferences in favor of the nonmoving party." Id. (quoting ClearOne, 643 F.3d at 772) (internal quotation marks omitted). The court does not "weigh evidence, judge witness credibility, or challenge the factual conclusions of the jury." Wagner v. Live Nation Motor Sports, Inc., 586 F.3d 1237, 1244 (10th Cir. 2009). If the evidence points in only one direction and no reasonable inferences can be made in support of the opposing party, then the moving party is entitled to judgment in its favor. Home Loan, 2016 WL 3610054, at *3. Accordingly, if the evidence, along with

reasonable inferences, supports the jury's verdict, then the motion must be denied.

The three claims under which the jury found Bio Tech liable require a plaintiff to prove causation. Webb v. Univ. of Utah, 125 P.3d 906, 909 (Utah 2005) (negligence); Schaerrer v. Stewart's Plaza Pharmacy, Inc., 79 P.3d 922, 928 (Utah 2003) (strict liability for failure to warn); SME Indus., Inc. v. Thompson, Ventulett, Stainback & Assocs., Inc., 28 P.3d 669, 677 (Utah 2001) (breach of express warranty). A causal connection cannot be presumed; it "is a matter the plaintiff is always required to prove affirmatively." Niemela v. Imperial Mfg., Inc., 263 P.3d 1191, 1199 (Utah Ct. App. 2011) (quoting Fox v. Brigham Young Univ., 176 P.3d 446, 451 (Utah Ct. App. 2007)) (internal quotation marks omitted). A court "may rule as a matter of law on this issue if there is no evidence to establish a causal connection, thus leaving causation to jury speculation." Id. (quoting Fox, 176 P.3d at 451) (internal quotation marks omitted).

If there is sufficient evidence to establish causation, the jury should decide the issue. Scott v. HK Contractors, 196 P.3d 635, 640–41 (Utah Ct. App. 2008). In Scott, the plaintiff, the estate of a woman who died after driving into a trench

5

at a road-construction site, sued the construction company that allegedly failed to adequately mark a safe route through the site. The trial court had entered summary judgment in the company's favor claiming that the estate's evidence failed to establish a causal connection between the woman's injury and the negligent direction of car traffic through the site. Id. at 640. The trial court said that the estate's conclusion was conjecture and then "volunteered alternative theories, including 'that the sun shone on her eyes or that she got dust . . . in her eyes' or that 'she's taking some kind of medication that maybe confuses her. Or she's listening to the radio or whatever.'" Id. (omission in original). The Utah Court of Appeals held that the trial court held the estate "to too high a standard." Id. The estate was not required to eliminate all alternate possibilities. Id. Instead, the estate "ought to have the opportunity to present its theory. . . and allow the jury to draw its own conclusions." Id. The appellate court said that the estate had offered the testimony of three people who found the construction site confusing and misleading. Id. The court held that this was enough for the jury to make a reasonable inference about causation and reversed the trial court's judgment. Id. at 641.

The court in Scott reviewed the evidence for causation under the state's summary-judgment standard.  Federal courts apply a similar standard for renewed judgments as a matter of law because when reviewing the sufficiency of the evidence, "the question is not which view of the evidence is most compelling or believable, but rather whether the evidence presented at trial was sufficient to allow the jury to find in [the plaintiff's] favor."  ClearOne, 643 F.3d at 772.

Here, Bio Tech claims the jury lacked sufficient evidence to make its causation holding and its damage calculation.  Bio Tech says that Flowers' two main theories at trial were that (1) Bio Tech products were acidic and injured plant tissue which opened the door for harmful pathogens, and (2) Bio Tech's untraditional fertilizing plan caused a nutrient deficiency that damaged the plants.  Bio Tech argues that because the jury declined to find Bio Tech liable for a manufacturing or design defect, and apportioned some fault to Fowers, the jury must have believed that the Bio Tech products were not acidic and did not injure plant tissue or cause pathogen-related diseases.  Bio Tech then contends that the jury's rejection of the manufacturing and design defect theories precludes any damages caused by plant-tissue injury and the onslaught of pathogens.

But the jury's rejection of the defect claims or assessment of fault does not necessarily mean that the jury found Bio Tech products did not injure Fowers' plants. For example, the jury could have found that Bio Tech manufactured and designed an acidic product that was not harmful to the plant tissue if applied by injecting it into the irrigation water. It would have been reasonable for the jury to conclude that the direct application to the plant injured tissue and enabled the pathogens to attack the plants.

Even if that were not the case, the jury heard sufficient evidence to conclude that the nutrition deficit alone could cause injuries to the plants. The expert witnesses discussed how nutrient deficiency caused discoloration in the leaves, or chlorosis, and how that corroborated the theory that malnutrition was the cause of the plants' injuries.

In its motion, Bio Tech makes the following argument while quoting its expert report:

> "yield reductions from transient nutrient deficiency can generally be remedied by the addition of proper nutrients, with crops recovering within one or two growing seasons, and usually without permanent loss of yield potential." At trial, however, Fowers put on evidence of damages in excess of one or two growing seasons and also for replacement costs for all orchards.

(Renewed Mot. J. Matter Law 7 n.1, ECF No. 169.) Assuming that Bio Tech's expert witness testified similarly at trial[1] and that the jury found the expert credible, the expert's quote supports the jury's verdict. It contemplates that "permanent loss of yield potential" can be caused by nutrient deficiency that was more than "transient." (Id.) A delayed start of applying traditional fertilizers would support the jury verdict. Jerry Fowers, one of the managers of the farm, testified that when he told Bio Tech about how the plants were suffering and asked for advice, Bio Tech told him to apply more of its products and to continue refraining from applying traditional fertilizers. Also, the above quote from Bio Tech's expert said that a recovery is "generally" possible, (id.); the jury could have reasonably found the Fowers' experience was an exception to the general rule.

      Bio Tech highlights that the experts at trial could not distinguish between damages caused by tissue injury and those caused by nutrient deficiency. (Id. at 7.) This does not make the damage assessment speculative. It would be reasonable to conclude that there were two independent causes of the plants' injuries: tissue injury, or malnutrition, or even both. If there was evidence that

---

[1] Neither party provides or cites the trial transcripts.

the injuries must have been caused by only tissue wounds or from only nutrient deficiency, Bio Tech does not cite it.

Similar to the holding in Scott v. HK Contractors, the court must respect the role of the factfinder on the question of causation and damages when sufficient evidence is presented. The court must uphold any reasonable conclusion supported by that evidence rather than imagine some way that the conclusion is illogical or contradictory. This jury's verdict was not based on speculation or conjecture.

## ORDER

For these reasons, the court DENIES Bio Tech's motion for judgment as a matter of law (ECF No. 169).

DATED this 30th day of August, 2016.

BY THE COURT:

*Tena Campbell*
TENA CAMPBELL
U.S. District Court Judge